WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brandon E. Bales,<br><br>    Petitioner,<br><br>vs.<br><br>Sheriff Clarence W. Dupnik, et al.,<br><br>    Respondents. | No. CV 12-00483-TUC-BPV<br><br>**ORDER** |

On June 29, 2012, Petitioner, Brandon E. Bales, confined in the Pima County Jail in Tucson, Arizona filed a Petition for Writ of Habeas Corpus pursuant to Title 28, U.S.C. § 2254, with Attachments I through IV attached. (Doc. 1)[1] Respondents have filed an answer to the petition ("Answer") with exhibits A through H attached. (Doc. 9). Petitioner filed a reply ("Reply"). (Doc. 15.)

Thereafter, Petitioner filed a notice to the Court about pending Supreme Court case relevant to the issues in this case (Doc. 17), and this Court stayed this action pending the decision from the United States Supreme Court in *Missouri v. McNeely*, 358 S.W.3d 65, cert. granted, __ U.S. __, 133 S.Ct. 98 (U.S. Sept. 25, 2012).

---

[1] "Doc." refers to the documents in this Court's file.

Subsequently, Petitioner filed a supplemental brief ("Supplemental Brief") (Doc. 19) and Respondents filed a responsive brief ("Supplemental Response") (Doc. 20). Petitioner has also filed a "Notice to Court about Relevant Arizona Supreme Court Ruling") (Doc. 21).

In accordance with the provisions of Title 28, U.S.C. § 636(c)(1), all parties consented to proceed before a United States Magistrate Judge to conduct any and all further proceedings in this case, including trial and entry of a final judgment, with direct review by the Ninth Circuit Court of Appeals if an appeal is filed. (Doc. 10.)

For the reasons discussed below, the Magistrate Judge denies relief on the grounds raised in the Petition, and dismisses this action in its entirety.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On March 25, 2009, an off-duty Tucson Police Department ("TPD") officer observed Petitioner, displaying signs of impairment, get into a vehicle, start the engine, and attempt to back out of a parking spot. Ex. A[2] (Ruling on Appeal), at 1.[3] The off-duty TPD officer called 911, and two officers from the Pima County Sheriff's Department, Deputy Duran and Sergeant Dowdy, responded to the call. *Id.* at 1-2. Petitioner refused to

---

[2] The exhibits in this order refer to the exhibits attached to Respondent's Answer (Doc. 9) unless otherwise indicated.

[3] Statements drawn from state appellate court's decision are afforded a presumption of correctness that may be rebutted only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1)("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Wainright v. Witt*, 469 U.S. 412, 426 (1985)(state court's findings are entitled to a presumption of correctness); *State v. Runningeagle*, 686 F.3d 758, 762, n.1 (9th Cir. 2012)(statement of facts drawn from the state appellate court's decision is afforded a presumption of correctness that may be rebutted only by clear and convincing evidence); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir. 2009)(same).

perform field sobriety tests. *Id*. at 2. Deputy Duran read Petitioner the Sheriff's Department's implied consent form which said: "Arizona law require[d]" him to submit to a "breath, blood or other bodily substance" sample in order to administratively suspend his license should his blood alcohol level be above the legal limit. Petition at 5. Deputy Duran also told Petitioner that should he fail to comply with the deputy's request, his license would be suspended, and the deputy would seek a search warrant from a magistrate judge to order Petitioner to submit to the blood test. *Id*. at 5-6. Petitioner signed the form and Deputy Duran drew two tubes of blood from Petitioner. *Id*. Petitioner was charged with driving under the influence in violation of Ariz.Rev.Stat. §§ 28-1381(A)(1), 28-1381(A)(2), and 28-1382(A)(1). Ex. A at 2.

Petitioner filed a motion to suppress evidence based on lack of consent for the blood draw, arguing in part that "Implied Consent" inadequately meets the Fourth Amendment's protection against unreasonable search and seizure. *See id*. at 2; Ex. B at ¶ 8. Following an evidentiary hearing, the trial court[4] denied the motion to suppress. *See id*. at 2, Ex. B at ¶ 9.

On March 23, 2010, the trial court found Petitioner guilty and sentenced him to 60 days of confinement in the Pima County Jail and unsupervised probation for a period of 12 months.[5] Ex. A, at 2; Petition, Attachment I (Order and Commitment).

---

[4] Petitioner was tried in the Pima County Consolidated Justice Court.

[5] Although it is not clear from the briefing, the Court assumes, given the sentence imposed, that Petitioner is no longer serving his sentence of confinement at the Pima County Jail. *See* Petition, Attachment 1 (Order of Commitment) (Petitioner directed to report to the Pima County Jail on June 20, 2012, and to be released on August 29, 2012). Petitioner's subsequent release from custody after filing the Petition does not deprive the

- 3 -

### A. Direct Review

Petitioner pursued a direct appeal to the Pima County Superior Court. Ex. A; *See* A.R.S. § 22–371(A) (defendant can appeal a Justice Court's final judgment to the superior court). In that appeal, Petitioner raised two Fourth Amendment claims: that his consent to the blood draw was invalid, and the police were without reasonable suspicion to stop him. The superior court rejected Petitioner's claims on January 21, 2011. *Id.*

Petitioner filed a special action proceeding in the Arizona Court of Appeals on April 21, 2011, arguing, among other things, that he did not give voluntary consent to the blood draw and that the seizure of the blood evidence violated the Fourth Amendment. Exs. B-E. The appellate court declined to exercise its discretionary special action jurisdiction. Ex. F. Petitioner sought review before the Arizona Supreme Court. Ex. G. The Arizona Supreme Court denied review on November 7, 2011.

### B. Federal Habeas

Petitioner filed his federal habeas petition on June 29, 2012. (Doc. 1.) Petitioner presents one ground in the Petition in support of his request for habeas relief:

(1) "Mr. Bales argues that the State of Arizona violated his Fourth Amendment protections when the deputies required him to submit a

---

District Court of habeas jurisdiction. *See Chaker v. Crogan*, 428 F.3d 1215, 1219. (holding that "if a petitioner is in custody at the time he files his federal habeas petition, his subsequent release from custody does not deprive the court of its jurisdiction"). Additionally, if Petitioner is still on probation for his convictions, he is "in custody" for purposes of habeas jurisdiction. *See id.* at 1219. Petitioner was sentenced to a 12 month period of probation. *See* Petition, Attachment 1. Finally, Petitioner's release from custody does not render this case moot because the Ninth Circuit has recognized that there is "an irrefutable presumption that collateral consequences result from any criminal conviction." *Id.* Where collateral consequences are presumed, the burden of establishing mootness is on the state. *Diaz v. Duckworth*, 143 F.3d 345, 346 (7th Cir. 1998); *cf. Demery v. Arpaio*, 378 F.3d 1020, 1025 (9th Cir. 2004)(stating in the context of a civil action brought by pre-trial detainees that a "party moving for dismissal on mootness grounds bears a heavy burden"). In this case, Respondents have not met their burden of demonstrating mootness because they did not address the issue of custody at all.

- 4 -

> blood test invoking Arizona's "Implied Consent" regulations and then used this seized evidence against him in a criminal court of law."

(Doc. 1, at 3-4.)

## II.  DISCUSSION

### A.  The petition is timely.

A one year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. 28 U.S.C. § 2244(d)(1).

Under the AEDPA, a state prisoner must generally file a petition for writ of habeas corpus within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review[.]"  28 U.S.C. § 2244(d)(1)(A).  "The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation[.]" 28 U.S.C. § 2244(d)(2).

Petitioner had until one year after his conviction and sentence became final to file his federal petition. Respondents do not contest the timeliness of the Petition. Upon review of the state-court record, the Court finds that, pursuant to the AEDPA, the Petition is timely.

### B.  The claims are exhausted.

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v.*

- 5 -

*Thompson*, 501 U.S. 722, 731 (1991). To exhaust state remedies, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277–78 (1971). If a habeas claim includes new factual allegations not presented to the state court, it may be considered unexhausted if the new facts "fundamentally alter" the legal claim presented and considered in state court. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

Petitioner's claim was presented to the Pima County Justice Court and to the Superior Court. Petitioner had no further appellate right pursuant to A.R.S. § 22-375 and, therefore, additional appellate procedure was unavailable. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). The Court finds that Petitioner has exhausted his claim. Thus, the Court can review the merits of his claims.

          C.    <u>The claims raised in the Petition are not subject to federal review in this § 2254.</u>

Petitioner alleges in his Petition that the State violated his Fourth Amendment rights against unreasonable search and seizure because (1) the State cannot show that Mr. Bales' consent was "voluntary" under the "five-factor" test on which the Ninth Circuit Court relies to determine voluntariness; (2) the State invoked "apparent authority" to seize the evidence; (3) and the State threatened Mr. Bales with the loss of his license if he did not acquiesce to the deputy's request for evidence. Petition, at 12-13. However, as Respondents assert, Petitioner had a full and fair opportunity to litigate his Fourth

Amendment claim to the state courts, and thus, it is not subject to federal habeas review under *Stone v. Powell*, 428 U.S. 465, 494 (1976)).

If a federal district court determines that full and fair litigation of the Fourth Amendment claim took place in state court, then it cannot grant habeas corpus relief on the ground that the evidence was obtained in violation of the Fourth Amendment. *Id*. at 494. The *Stone* holding "is grounded in the Court's conclusion that in cases where a petitioner's Fourth Amendment claim has been adequately litigated in state court, enforcing the exclusionary rule through writs of habeas corpus would not further the deterrent and educative purposes of the rule to an extent sufficient to counter the negative effect such a policy would have on the interests of judicial efficiency, comity and federalism." *Woolery v. A.J. Arave*, 8 F.3d 1325, 1326 (9th Cir. 1993) (citing *Stone*, 428 U.S. at 493-494).

In determining whether a petitioner has had a full and fair opportunity to litigate his Fourth Amendment claim in state court "[t]he relevant inquiry is whether [the] petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (1996) (citations omitted). "Such an opportunity for a fair hearing forecloses this court's inquiry, upon habeas corpus petition, into the trial court's subsequent course of action, including whether or not the trial court has made express findings of fact. *Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986) (internal citations omitted).

The petitioner bears the burden of establishing that the state courts did not fully and fairly consider his Fourth Amendment claim. *Mack v. Cupp*, 564 F.2d 898, 901 (9th

Cir. 1977). The record of the state proceedings in this case compels the conclusion that appellant received a full and fair opportunity to litigate his Fourth Amendment claims. The essentially identical claims raised in this Petition were considered and rejected by the trial and appellate courts. Ex. A, at 4-6. Petitioner's counsel filed a motion to suppress in the trial court and the trial court held an evidentiary hearing on this issue. The superior court's ruling on appeal clearly reflects that Petitioner's contentions were carefully considered by both the trial and the appellate court. *Id.*

Petitioner argues that Respondents concede in their Answer that habeas relief is available if the state court's ruling were contrary to, or involved an unreasonable application of clearly established law. *See* Answer, at 5 (citing 28 U.S.C. § 2254(d)). This argument is not persuasive in light of the Ninth Circuits continued application of *Stone* to cases governed by the AEDPA. *See e.g., Stanley v. Cullen*, 633 F.3d 852 (9th Cir. 2011); *Fairchild v. Wright*, 362 Fed.Appx. 851 (9th Cir. 2010); *see also Cabrera v. Hinsley*, 324 F.3d 527, 530 (7th Cir.2003) (noting that *Stone* placed Fourth Amendment claims entirely outside the scope of the AEDPA).

Other than the outcome, Petitioner does not identify any other basis for claiming that the hearing was not full or fair. *Missouri v. McNeely*, __ U.S. __, 133 S. Ct. 1552 (2013), addressed by the parties in supplemental briefing, does not aid Petitioner, whose claim is barred by *Stone*.[6] Based on the record, Petitioner had a full and fair opportunity

---

[6] Even if the claim were not barred, *McNeely* provides no support for Petitioner's claim, as its holding, although confirming that a blood draw taken pursuant to a state's implied consent law is in fact subject to the Fourth Amendment's restrictions on warrantless searches, addresses the "well-recognized" exception to the Fourth

- 8 -

in the state court to litigate his claims, and took full advantage of the opportunity. Therefore, the Court will not consider the merits or grant relief on his Fourth Amendment claims.

### D. Alternatively, the Petition is meritless.

#### 1. Standard of review

Because Bales filed his petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997) (holding that AEDPA governs federal habeas petitions filed after the date of its enactment, April 24, 1996).

The AEDPA established a "substantially higher threshold" for habeas relief with the "acknowledged purpose of 'reduc[ing] delays in the execution of state and federal criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, 473, 475 (2007) (citations omitted). The AEDPA's "'highly deferential standard for evaluating state-court rulings' ... demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*) (quoting *Lindh*, 521 U.S. at 333 n. 7).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

Amendment's warrant requirement of "exigent circumstances." *See McNeely, supra*. The issue in this case is another "well-recognized" exception of "voluntary consent," an issue not addressed by the *McNeely* Court.

- 9 -

28 U.S.C. § 2254(d). The relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005). The superior court rejected Petitioner's claims raised in his appeal on the merits in a reasoned opinion, the appellate court declined jurisdiction of Petitioner's special action proceeding, without further comment, and the supreme court denied review without comment. Exs. H, I. Under the "look through" doctrine, Petitioner's claims are deemed to have been rejected for the same reasons given in the last reasoned decision on the merits. In this case the Court looks to the superior court's ruling on appeal. *See Ylst*, 501 U.S. at 802-06.

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state-court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003), *overruled on other grounds Lockyer v. Andrade*, 538 U.S. 63 (2003). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue.

*Williams*, 529 U.S. at 381; *see Musladin*, 549 U.S. at 76-77; *Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004). Nevertheless, while only Supreme Court authority is binding, circuit court precedent may be "persuasive" in determining what law is clearly established and whether a state court applied that law unreasonably. *Clark*, 331 F.3d at 1069.

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state-court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams,* 529 U.S. at 405–06; *see Early v. Packer,* 537 U.S. 3, 8 (2002) (*per curiam*). In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams,* 529 U.S. at 406; *see Lambert v. Blodgett,* 393 F.3d 943, 974 (9th Cir. 2004).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to

- 11 -

a new context where it should apply." *Williams,* 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner must show that the state-court decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Landrigan,* 550 U.S. at 473; *Visciotti,* 537 U.S. at 25.

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state-court decision was based upon an unreasonable determination of the facts. *Miller–El v. Dretke,* 545 U.S. 231, 240 (2005) (*Miller–El II* ). A state-court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El,* 537 U.S. 322, 340 (2003) ( *Miller–El I* ); *see Taylor*, 366 F.3d at 999. In considering a challenge under § 2254(d)(2), state-court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan,* 550 U.S. at 473–74; *Miller–El II,* 545 U.S. at 240.

**2.    Petitioner's claim is without merit.**

Petitioner asserts that the State cannot show that Mr. Bales' consent was "voluntary" under the five-factor" test on which the Ninth Circuit Court of Appeals relies to determine voluntariness. Petition at 14, citing *United States v. Jones*, 286 F.3d 1146, 1152 (9th Cir. 2002). This Court can grant relief only on a claim that a state court's decision was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. §

2254(d)(1). Thus, as the Court finds in this case, relief is not warranted under §2254(d)(1) for adjudications that are contrary to, or unreasonable applications of, Federal law as determined by the United States Court of Appeals, Ninth Circuit.

The relevant clearly established Supreme Court law for purposes of determining when a warrantless search is valid because it was conducted based on an individual's voluntary consent is *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). To determine whether consent was given voluntarily courts examine the totality of the circumstances. *See id.* at 227. The state court correctly identified this controlling precedent and applied a "totality of the circumstances" test to determine if Petitioner's blood draw was conducted pursuant to voluntary consent. *See* Ex. A at 5 (citing *Schneckloth*, 412 U.S. at 219).

In applying the totality of the circumstances test to determine if Petitioner's consent was voluntary, the superior court focused on a number of relevant facts, including the fact that Sergeant Dowdy did not tell Petitioner that he was "required to submit to a blood draw." Ex. A at 6. Rather, Sergeant Dowdy explained that he could consent, or the officers could attempt to get a search warrant.[7] *Id.* Further, Sergeant Dowdy did not tell Petitioner or advise Petitioner as to what he "should or shouldn't do," instead, outlined what the officers' option would be if Petitioner refused to agree to the blood draw. *Id.* The Court cannot conclude that the superior court's decision was "objectively unreasonable." *Williams*, 529 U.S. at 409; *Landrigan*, 550 U.S. at 473;

---

[7] This was not merely an empty threat or coercive device utilized by the officers. As correctly noted by Respondents, it was within the officer's authority to attempt to obtain a warrant because the police constitutionally can forcibly draw blood pursuant to a validly obtained warrant based on probable cause. *Schmerber v. California*, 384 U.S. 757, 759–72 (1966).

*Visciotti*, 537 U.S. at 25.

Petitioner asserts that a recently decided Arizona Supreme Court case supports Petitioner's position that Arizona's implied consent statute, A.R.S. § 28-1321, is a "compelled draw," which is antithetical and opposite to a "voluntary draw," requiring the blood evidence seized form him to be suppressed as not Fourth Amendment compliant. *See Notice* (Doc. 21) (Attachment, *State v. Butler*, 232 Ariz. 84 (2013)). The case submitted by Petitioner does not support his claim. In *Butler*, the Arizona Supreme Court rejected the State's argument that the "consent" in Arizona's implied consent law constitutes an exception to the warrant requirement or satisfies the Fourth Amendment's requirement. In other words, the State was asserting that the implied consent law could be used as a substitute for actual consent. The Arizona court held that the Fourth Amendment requires consent to be voluntary, independent of Arizona's implied consent law, and is a question of fact to be determined by a totality of the circumstances. *See State v. Butler*, 232 Ariz. 84, ¶ 13, ¶ 17, ¶ 18 (2013). Although the Arizona Supreme Court found that the trial court acted within its discretion in ruling that the juvenile defendant's consent was involuntary in that case, the facts were dissimilar to the facts of this case. In *Butler*, the court considered factors such as the juvenile's age and absence of his parents, previous experience with justice system, length of detention without parents, his nervous and upset demeanor, and, the deputies explanation of the implied consent form in "plain English" that the juvenile was "required to submit to the specified test." *Id*. at ¶14. As this Court previously found, the State court appropriately applied the totality of the circumstances test in this case, and, considering the relevant factors reached the

objectively reasonable conclusion that Petitioner's consent was voluntary.

Petitioner further asserts that the state court's ruling on the issue of voluntariness was in error because, under *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968), the Petitioner's consent could not be voluntary because the facts establish that the deputies told Petitioner that "Arizona law' required him to submit, and it is impossible to prove "voluntary consent" by invoking "Arizona law." Petition at 16-17. The Court disagrees. The law enforcement officers in this case did not invoke Arizona law to compel Petitioner's consent, rather, they explained "Arizona law," and properly informed Petitioner of his choices in consenting or refusing a blood draw under Arizona's implied consent law.

A consent is not voluntary if given only in response to a claim of lawful authority. *Bumper*, 391 U.S. at 548-49. In *Bumper*, law enforcement officials gained entrance to a residence by falsely asserting they had a warrant to search. *Id.* at 548. The Court found no consent under these circumstances. In this case, unlike *Bumper*, there is no indication that either Deputy Duran or Sergeant Dowdy asserted that they had the immediate authority to draw Petitioner's blood, without first obtaining consent or a search warrant. As the appellate court found: "Sergeant Dowdy explained to Mr. Bales that he could either sign the form consenting to the blood draw or that the officers "could attempt to contact a judge to see if [they] could get a search warrant." Ex. A at 6 (citing Evidentiary Hearing Transcript, not part of this record). Deputy Doran testified that, when reading the implied consent form, he told Mr. Bales that if he refused to take the blood test, his driver's license could be suspended for a year." Ex. A at 6 (citing Evidentiary Hearing

Transcript). The court's factual findings distinguish this case from the "apparent authority" invoked in *Bumper*: "The officers did not threaten or compel Mr. Bales into consenting to the blood draw. They informed him that under Arizona law he could choose not to submit the blood test and that his license could be suspended for a year. They told him that if he chose to refuse, they could attempt to obtain a search warrant. Mr. Bales was aware of his options and chose to submit to the blood draw." Ex. A.

Finally, Petitioner argues that the threat exerted by Arizona's implied consent law, that an individual must submit to have blood drawn or suffer the administrative consequences of suspension of his or her driver's license for a year, is coercion which renders Petitioner's consent involuntary under *Schneckloth*, *supra*. Because the superior court did not directly address this claim, and because Petitioner's motion to suppress and subsequent appeal of the voluntariness issue are not in the record, the Court is uncertain whether this precise issue was clearly and explicitly exhausted by Petitioner. Nonetheless, because the Court finds this claim fails to raise a colorable federal claim, addresses this claim in its alternative ruling on the merits. *See* 28 U.S.C. § 2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

Petitioner points to no clearly established Supreme Court precedent which holds that the threat exerted by Arizona's or any other state's, implied consent law is *per se* unduly coercive. Thus, Petitioner has not demonstrated that the Arizona court's, in applying a totality of the circumstances approach under pursuant to *Schneckloth, supra*,

was contrary to or an unreasonable application Federal law, as determined by the Supreme Court of the United States.

Accordingly, the Court finds that the state court's decision was not contrary to, or an unreasonable application of, Supreme Court law, and relief is not warranted on his claims.

### III.     CERTIFICATE OF APPEALABILITY

In the event Petitioner appeals from this Court's judgment, and in the interests of conserving scarce resources that otherwise might be consumed drafting an application for a certificate of appealability to this Court, the Court on its own initiative has evaluated the claims within the Petition for suitability for the issuance of a certificate of appealability. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Rule 22(b) of the Federal Rules of Appellate Procedure provides that when an appeal is taken by a petitioner, the district judge who rendered the judgment "shall" either issue a certificate of appealability ("COA") or state the reasons why such a certificate should not issue. Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4, (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial

of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Upon review of the record in light of the standards for granting a certificate of appealability, the Court concludes that a certificate shall not issue as the resolution of the petition is not debatable among reasonable jurists and does not deserve further proceedings.

Accordingly,

IT IS ORDERED as follows:

(1) Petitioner's § 2254 habeas petition (Doc. 1) is DENIED and this case is dismissed with prejudice.

(2) A Certificate of Appealability is DENIED and shall not issue

(3) The Clerk of the Court shall enter judgment accordingly and close the file in this matter.

Dated this 6th day of May, 2014.

_____
Bernardo P. Velasco
United States Magistrate Judge